SIMS, Appellant, v. McLAREN, Respondent.

**St. Louis Court of Appeals, February 27, 1906.**

1. **EVIDENCE: Party to Instrument.** A written instrument purporting to be signed by one who was not shown by the instrument itself or by other evidence to have been a party to it and who denied having ever seen it, was not evidence against him.

2. **APPELLATE PRACTICE: Bill of Exceptions: Application for Continuance.** The ruling of the trial court upon an application for a continuance which was not contained in the bill of exceptions will not be reviewed.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Sam J. Corbett* for appellant.

*Faris & Oliver* for respondents.

GOODE, J.—This action is based on our landlord and tenant statutes and originated before a justice of the peace to enforce the payment of rent alleged to be due from defendant to plaintiff. The rent claimed was for the use of forty-eight acres of land for the year 1903. In the statement filed before the justice, plaintiff averred that she leased the land to defendant on or about January, 1903, for the period of one year from that date and defendant agreed to pay a rental of four dollars an acre at the usual time for paying farm rent, but refused to do so though the rent was due. The action was accompanied by an attachment based on defendant's alleged removal of the crops from the leased premises. The trials before the justice of the peace on the plea in abatement and on the merits, both resulted in verdicts

for defendant and plaintiff appealed to the circuit court where like verdicts were returned. An amended statement was filed in the circuit court which, instead of alleging a contract of lease between the parties for the year 1903, as the original statement had done, charged that on January 1, 1898, plaintiff had, in writing, leased the land in question to defendant for a term to begin on that day and end on December 31, 1902; that is, five years later. It will be noticed that this alleged written lease did not cover the year 1903, for the rent of which this action was instituted. In regard to the occupancy of the land by defendant for that year, the allegation was that no lease agreement was made between the parties that defendant should remain on and cultivate the land after 1902, but that he did remain on and cultivated it with the implied consent of plaintiff and, hence, occupied it as plaintiff's tenant; that its reasonable rental value was four dollars an acre. Wherefore plaintiff alleged that defendant was indebted to her in the sum of $192 for the whole forty-eight acres. The divergence between the original and the amended statements is but an example of the confusion and inconsistency which run through the entire case. In truth it is impossible to derive any clear notion of the facts from reading the testimony preserved in the transcript. We shall relate the facts according to the best understanding we have been able to gather from the record. Plaintiff is a non-resident of Pemiscot county, and, at the time of the first leasing lived in Memphis, Tennessee. It seems she now lives in St. Louis. The oral testimony goes to show that plaintiff had leased the land in controversy in the year 1895, or thereabouts, to a colored man named Essex Rufus, for seven years. Rufus was not to pay any rent, at least for a portion of that time; but in consideration of the use of the premises was to clear the land and erect certain improvements on it. He got into some trouble with the authorities and was sent to the penitentiary. As we understand, McLaren, the defendant, had taken a written lease for five years

from plaintiff on some other land. When Rufus got into trouble plaintiff wanted defendant to take hold of Rufus's contract and complete it. Rufus's lease would have expired January 1, 1902, and, thereafter, according to its terms, he would have had to pay cash rent. But defendant's testimony, and it is corroborated by that of other witnesses, was that Mrs. Sims agreed with him (defendant) that she would allow him two years more; that is, during the years 1902 and 1903, to complete the Rufus contract. McLaren swore this contract was put into a writing which Mrs. Sims kept. The effect of the agreement, if it was made, was that defendant was to pay no cash rent during 1902 and 1903, but was to continue making the improvements Rufus had agreed to make. The merits of the case turn on whether or not Mrs. Sims agreed to make this extension. Practically all the evidence goes to show she did. Beyond doubt the greater weight of it does. The foregoing are the facts to be gathered from the oral testimony. But when we turn to the transcript, we find in it a copy of a written lease by Mrs. Sims of the land in question, made, not in 1898, which is said to have been the time when she made the lease to Essex Rufus, and not for seven years, the terms of that lease; but for five years; and naming as lessee neither Essex Rufus nor McLaren, but one Rufus Smith. The instrument purports to have been signed and, in a way, acknowledged by McLaren; but he swore positively he never had signed it or seen it until the trial before the justice, and the certificate of acknowledgment does not state that he is the person described in the instrument. Still greater confusion is introduced by McLaren's testimony that Rufus Smith was not Essex Rufus, but a person who lived on the farm under a sublease from Essex Rufus and whom the latter engaged to complete his contract when he was sent to the penitentiary. We can make nothing of this lease to Rufus Smith, nor reconcile it at all with the oral testimony. McLaren swore he had nothing to do with it, knew noth-

ing about it, and that his contract with plaintiff was contained in an altogether different document. No witness contradicted this statement. The Smith lease, as we may call it, covers five years of the seven years the land is said to have been leased to Essex Rufus and was made on substantially the same conditions McLaren swore plaintiff granted him, to-wit; the lessee (Smith, or whosoever else he was) was not to pay cash rent for a part of the term, but was to make improvements on the land as the consideration to be rendered for cultivating it. But these improvements were to be completed by January 1, 1900, and payment of cash rent then begin. Though the evidence is mystifying in many respects, one thing stands out clearly, and that is, that the dispute between the parties to this action was as to whether or not Mrs. Sims had agreed with McLaren that he might remain on the leased premises during the years 1902 and 1903 without paying cash rent. In other words, whether she extended the time for two years after 1901 for the erection of improvements in consideration of the occupancy of the premises. We find little or no evidence tending to support her contention that she had not extended it and unquestionably there was abundant evidence the other way to support the finding of the jury that she had. She was not present at the trial to testify and no witness contradicted McLaren's version of the matter. The controlling circumstance in disposing of both the appeal from the judgment on the plea in abatement and the one from the judgment on the merits is, that plaintiff failed to make a prima facie case as to any rent being due her. She may have had good cause for attaching if the tenant had been indebted to her for rent; but this she wholly failed to establish. The only evidence remotely tending to prove the fact was the written lease purporting to have been executed by plaintiff to Rufus Smith and to have been signed by her and defendant. If that document was in truth a lease to which McLaren was a party, it had some tendency to prove he owed rent

for 1903. But that McLaren was a party to it or had executed it was not shown. The form of the certificate of acknowledgment was ambiguous. It only recited that McLaren, the person whose name was subscribed to it, appeared and acknowledged it, without stating that McLaren was the person named in the instrument. We fail to see what figure the certificate of acknowledgment would cut at best as far as binding the lessee is concerned. An acknowledgment is intended to show that the grantor of the premises conveyed, executed the instrument. At any rate, it does not appear from the certificate of acklowledgment or from the body of the instrument in question, that McLaren was a party to it. The lessee named is Rufus Smith. There is no evidence to prove "Rufus Smith" was another name under which McLaren was known. Plaintiff contented herself with introducing the written instrument in evidence without any testimony that McLaren was a party to it or had signed it; and as he denied having seen it until he was sued for possession of the premises, it was not evidence against him. [Taylor v. Bowen, 84 Mo. App. 613.]

There is loud complaint in the briefs for plaintiff against the ruling of the trial court in denying her a continuance. But the application for a continuance is not contained in the bills of exceptions—neither in the one relating to the plea in abatement nor the one relating to the trial on the merits. Perhaps if that application was before us, it would explain why plaintiff failed to prove what was necessary to constitute a case.

The judgment is affirmed. All concur.